IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

JIMMY O'NEAL BIRDSONG                                                      PLAINTIFF

VS.                                              CIVIL ACTION NO. 3:13cv389-DPJ-FKB

CAROLYN W. COLVIN,
ACTING COMMISSIONER
OF SOCIAL SECURITY                                              DEFENDANT

**REPORT AND RECOMMENDATION**

Jimmy O'Neal Birdsong brought this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration. Birdsong has filed a memorandum [10] in support of his appeal, and the Commissioner has filed a motion to affirm [11] and a supporting memorandum. Having considered the memoranda of the parties and the administrative record, the undersigned recommends that the Commissioner's motion be granted and that the decision of the Commissioner be affirmed.

**I. Procedural History**

Birdsong was born on September 23, 1972, and was 39 years of age at the time of his hearing before the administrative law judge (ALJ). He has a ninth grade education. His past relevant work experience is as a truck dispatcher, forklift operator, and upholsterer. Birdsong filed for disability insurance benefits and supplemental security income on July 6, 2010, alleging an onset date of June 30, 2008. His applications were denied initially and on reconsideration, and he requested and was granted a hearing

before an ALJ, who determined that Birdsong is not disabled. The Appeals Council denied review, thereby making the decision of the ALJ the final decision of the Commissioner. Birdsong then brought this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II. Evidence Before the ALJ

Birdsong has suffered from Crohn's disease since 2003. His treatment has been managed primarily by Dr. Mark E. Wilson, a gastroenterologist, and Dr. L.C. Tennin, Jr., his family physician. Medications routinely prescribed for him include sulfasalazine, Lorcet, Xanax, and Phenergan. Since the onset of his disease, he has received hospital treatment on numerous occasions for acute episodes. Between his alleged onset date of June 30, 2008, and the date of his hearing, January 23, 2012, he sought emergency room treatment on approximately six occasions. R. 468-76, 462-67, 445-61, 433-38, 488-98, 503-10. The medical record is also notable for a ventral hernia for which he was awaiting surgery at the time of the hearing, gastroesophageal reflux disease, and a disc herniation at L5/S1.

On December 3, 2011, Dr. Tennin completed a form setting forth his assessment of Birdsong's pain and its effect on his ability to work. R. 577. Dr. Tennin stated that Birdsong's pain would distract him from the adequate performance of daily activities or work, that the pain resulting from exertional activities would cause distraction from or total abandonment of tasks, and that the side effects from Birdsong's medications would be expected to be severe and to limit his effectiveness due to distraction, inattention, drowsiness, etc. *Id.*

2

At the hearing, Birdsong testified that he suffers from Crohn's disease, low back problems, and a hernia. R. 27. He experiences abdominal pain most of the time as a result of the Crohn's disease and has to go to the restroom approximately six or seven times a day. R. 32. When he leaves his home, he often takes an extra change of clothes in case he is unable to reach a restroom and has an accident. R. 32-33. In addition to these daily issues, he suffers from periodic flare-ups of his Crohn's disease. R. 34-35. His most recent episode was approximately three months prior to the hearing; he suffered another episode approximately a year and a half before the most recent one. R. 35. Often these episodes require hospitalization to monitor his diet and check his medications. *Id.* Birdsong stated that his medications to do not completely control his pain, and he rated his average rate of pain at seven or eight on a ten-point scale. R. 34. He denied any side effects from medication. R. 28.

Birdsong lives with his fiancee. R. 26. He performs a few household chores, enjoys woodworking, and often goes out to eat on Sundays after church. R. 31-32. He does not drive. R. 32.

Also testifying at the hearing was a vocational expert (VE), to whom the ALJ posed the following hypothetical: an individual of Birdsong's age, education, background, work history, and transferrable skills, who can occasionally lift ten pounds, frequently lift less than ten pounds, walk or stand for four hours in an eight-hour work day in one-hour increments, sit for four hours in an eight-hour work day in one-hour increments, who can occasionally climb, balance, stoop, crouch, kneel, and crawl, who can push/pull up to ten pounds occasionally and less then ten pounds frequently, who cannot engage in

commercial driving, who must avoid excessive vibration, who would need to have a restroom readily available, and who would miss one to two days of work per month because of pain. R. 39. The VE responded that such an individual could perform Birdsong's past relevant work of trucking dispatcher. *Id.* Birdsong's attorney then questioned the VE, adopting the same hypothetical except with the additional limitation that "he would need to miss more than . . . 10 percent of the normal break time." R. 40. The VE responded that there would be no work such an individual could perform. *Id.*

### III. The Decision of the ALJ and Analysis

In his decision, the ALJ worked through the familiar sequential evaluation process for determining disability.[1] He found that Birdsong has the severe impairments of Crohn's

---

[1] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1) whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2) whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

(3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4) whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett*

4

disease, ventral hernia, and gastroesophageal reflux disease pain syndrome, and the non-severe impairment of disc herniation at L5/S1.  R. 14-15.  At step three, the ALJ determined that Birdsong does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 15.  The ALJ found that Birdsong has the following residual functional capacity (RFC):  He can lift ten pounds occasionally and less than ten pounds frequently; he can stand/walk a total of four hours in one-hour increments during an eight-hour workday; he can sit for four hours in increments of one hour; he can occasionally climb, balance, stoop, crouch, kneel, and crawl; he can push/pull ten pounds occasionally and less than ten frequently; he cannot drive commercially; he must avoid excessive vibration; he must have a bathroom readily available, and he will miss one to two days per month due to pain.  R. 15.  In reaching this assessment of Birdsong's RFC, the ALJ found that Birdsong's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible.  R. 16.  He gave limited weight to Dr. Tennin's opinion set forth in his pain assessment, stating that the medical evidence did not support it. R. 16.  Relying upon the testimony of the VE, the ALJ determined that Birdsong can perform his past relevant work as a truck dispatcher and is therefore not disabled.  R. 17.

In reviewing the Commissioner's decision, this court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Muse v. Sullivan*, 925

---

*v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

5

F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).[2] In his memorandum, Birdsong argues that the ALJ's decision cannot stand because it was based upon VE testimony in response to a flawed hypothetical.

Where the ALJ relies upon expert testimony in response to a hypothetical, that hypothetical must reasonably incorporate all of the limitations recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431, 435-36 (5th Cir. 1994). Birdsong argues that the hypothetical in his case was flawed because it did not include the limitation that he would need six or seven restroom breaks daily. The short answer to this argument is that the ALJ made no finding that Birdsong would need this frequency of restroom breaks. Birdsong attempts to establish that the ALJ did make such a finding by arguing that the ALJ implicitly adopted all of Birdsong's subjective testimony regarding his limitations. He contends that the ALJ's inclusion of the requirement that Birdsong have a restroom readily available necessitates the conclusion that the ALJ also accepted Birdsong's testimony as to the frequency of restroom breaks. This line of reasoning is unpersuasive. First of all, the ALJ specifically stated that he did not accept all of Birdsong's subjective testimony. Furthermore, his inclusion of the requirement of a nearby restroom could have been based upon the need for Birdsong to get to a restroom quickly, rather than frequently.

---

[2] "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance. . . ." *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)). If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed, *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is *against* the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

Finally, even if the ALJ had accepted Birdsong's testimony as to the frequency of his bathroom breaks, that testimony was not stated in terms of an eight-hour workday; rather, Birdsong merely stated that he went to the restroom six or seven times "a day."  The undersigned concludes that the hypothetical was not flawed,  that the ALJ's decision was based upon substantial evidence, and that no reversible errors of law were made.

## IV.  **Conclusion**

For these reasons, the undersigned recommends that the Commissioner's motion be granted and the decision of the Commissioner affirmed.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the 22nd day of July, 2014.

/s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE